UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
MICHAEL FANNING,               )
                               )
     Plaintiff,                )
                               )
     v.                        )     Civil Action No. 09-1118 (RWR)
                               )
TROTTER SITE PREPARATION,      )
LLC,                           )
                               )
     Defendant.                )
_____)
```

MEMORANDUM OPINION AND ORDER

Plaintiff Michael Fanning, the Chief Executive Officer of
the Central Pension Fund of the International Union of Operating
Engineers and Participating Employers ("the Fund"), brings claims
against defendant Trotter Site Preparation ("Trotter"), alleging
that Trotter has failed to remit contractually required
contributions to the Fund.  The defendant has moved to transfer
venue to the United States District Court for the District of
South Carolina.  Because the defendant has shown that a transfer
of venue is in the interest of justice, the defendant's motion
will be granted.

BACKGROUND

Trotter is a South Carolina corporation that employed
between six and ten employees at the Department of Energy's
Savannah River Site in South Carolina to conduct site preparation
work.  (Def.'s Mem. in Supp. of Mot. to Transfer ("Def.'s Mem."),

Ex. B ¶¶ 3, 5.)  Trotter signed a collective bargaining agreement with, among others, the International Union of Operating Engineers Local No. 470, establishing the terms under which it would employ its workers at the site.  (Compl. ¶ 6).  Trotter agreed to remit regular payments for each hour worked by its employees to the Fund, a multi-employer employee pension benefit plan as defined by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.  (Compl. ¶¶ 1, 8.)  The Fund is established and maintained according to its Restated Agreement and Declaration of Trust, which provides that the Pension Fund is to be administered in Washington, D.C. and that its terms are to be construed under the laws of the District of Columbia.  (Pl.'s Opp'n. Ex. 1A §§ 3.7, 9.1.)

Fanning alleges that Trotter failed to pay its full contributions under the terms of the collective bargaining agreement.  (Compl. ¶ 10.)  Trotter claims that the collective bargaining agreement allowed it to employ up to four non-union individuals as key employees for whom it did not have to make fringe benefit contributions, such as contributions to the Fund. (Def.'s Mem. at 3.)  Other than the contributions for the key employees, Trotter claims that it made all required payments to the Fund.  After the Fund's auditors visited Trotter's office in South Carolina for an audit, the Fund sent Trotter a letter demanding additional contributions to the Fund, liquidated

damages, interest, and audit expenses.  (Id. at 5.)  Trotter did
not make the payments, and the Fund brought this suit.  (Id.)
Trotter filed its own suit in the District of South Carolina
seeking, among other things, a declaratory judgment regarding its
rights and payment obligations under the collective bargaining
agreement, and indemnification from the Local and the key
employees.  (Def.'s Reply at 9.)  Trotter moves to transfer this
case to the United States District Court for the District of
South Carolina.

## DISCUSSION

A case may be transferred to another venue under 28 U.S.C.
§ 1404(a) "[f]or the convenience of parties and witnesses, in the
interest of justice[.]"  28 U.S.C. § 1404(a).  See also Piper
Aircraft Co. v. Reyno, 454 U.S. 235, 253 (1981).  The moving
party carries the burden of showing that a transfer is
appropriate.  Montgomery v. STG Int'l, Inc., 532 F. Supp. 2d 29,
32 (D.D.C. 2008); Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d
1, 3 (D.D.C. 2006).  Because "'it is perhaps impossible to
develop any fixed general rules on when cases should be
transferred[,]' . . . the proper technique to be employed is a
factually analytical, case-by-case determination of convenience
and fairness."  SEC v. Savoy Indus. Inc., 587 F.2d 1149, 1154
(D.C. Cir. 1978) (quoting Starnes v. McGuire, 512 F.2d 918, 925
(D.C. Cir. 1974) (en banc)).

"Any transfer under § 1404(a) is restricted to a venue where the action 'might have been brought.'" Robinson v. Eli Lilly Co., 535 F. Supp. 2d 49, 51 (D.D.C. 2008) (quoting 28 U.S.C. § 1404(a)).  When, as here, jurisdiction is based on a federal question under ERISA, and an action is brought in a United States District Court, "it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found[.]"  29 U.S.C. § 1132(e)(2). The defendant is incorporated and resides in South Carolina, and any breach occurred in South Carolina, since that is where Trotter failed to make the payments Fanning alleges it owes under the collective bargaining agreement.  (See Def.'s Mem. at 4.) Therefore, this action could have been brought in the potential transferee district.

After determining that venue in the proposed transferee district would be proper, a court then "must weigh in the balance the convenience of the witnesses and those public-interest factors of systemic integrity and fairness that, in addition to [the] private concerns [of the parties], come under the heading of 'the interest of justice.'"  Stewart Org. Inc. v. Ricoh Corp., 487 U.S. 22, 30 (1988).  The private factors to assess include "1) the plaintiff's choice of forum, 2) the defendant's choice of forum, 3) where the claim arose, 4) the convenience of the parties, 5) the convenience of the witnesses, particularly if

important witnesses may actually be unavailable to give live trial testimony in one of the districts, and 6) the ease of access to sources of proof." Demery v. Montgomery County, Md., 602 F. Supp. 2d 206, 210 (D.D.C. 2009). "Public interest factors include 1) the local interest in making local decisions about local controversies, 2) the potential transferee court's familiarity with applicable law, and 3) the congestion of the transferee court compared to that of the transferor court." Id.

I.   PRIVATE INTERESTS

The plaintiff's choice of forum is typically given special weight in ERISA cases, particularly when, as here, the plan is administered in the district in which the suit is filed. Flynn v. Veazey Constr. Corp., 310 F. Supp. 2d 186, 193 (D.D.C. 2004); Int'l Broth. of Painters and Allied Trades Union v. Rose Bros. Home Decorating Center, Inc., Civil Action No. 91-1699 (GHR), 1992 WL 24036, at *2 (D.D.C. Jan. 14, 1992) (noting that "the ERISA venue statute . . . evinces Congress's intent to expand, rather than restrict, the ERISA plaintiff's choice of forum") (internal quotation marks omitted).  However, deference to the plaintiff's choice of forum is not absolute, Gipson v. Wells Fargo & Co., 563 F. Supp. 2d 149, 157 (D.D.C. 2008), and the ERISA venue statute does not prohibit a transfer under 28 U.S.C. § 1404(a).  Flynn v. Berich, 603 F. Supp. 2d 49, 50 (D.D.C. 2009); Rose Bros., 1992 WL 24036, at *2.

The defendant has filed an action for a declaratory judgment and indemnification in the District of South Carolina against the plaintiffs, the Local, and the individuals designated as key employees regarding the obligations to pay that plaintiff here alleges the defendant violated. (Def.'s Reply at 9.) It would be far more efficient to resolve all of these overlapping issues in a single litigation. See Rose Bros., 1992 WL 24036, at *2 (finding that "[t]he availability of another forum in which [all] issues could be tried in a single case" warranted transfer because alternatively the "defendant. . . would be forced to litigate issues of liability to the Pension Fund and indemnification from the local in separate lawsuits in separate fora, hundreds of miles apart, at great expense"). Because it appears that the Local and the key employees do not have any meaningful connection to the District of Columbia (Def.'s Reply at 9), there may not be personal jurisdiction over them here, see Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985), which may prevent Trotter from impleading them on indemnification claims in this district. The potential transferee district, however, appears to be a venue in which the district court would have personal jurisdiction over the Local and the key employees, in addition to the Fund and Trotter, enabling resolution of all of the issues relating to the obligation to contribute to the pension plan in a single litigation in that district. Cf. Bakery

& Confectionery Union and Indus. Int'l Pension Fund v. Ralph's
Grocery Co., 118 F.3d 1018, 1021 (4th Cir. 1997) (observing that
"[b]efore section 515 was enacted, collection actions . . . often
were complicated by issues that had arisen between the employer
and the local union but were *unrelated* to the employer's
obligation to the plan") (emphasis added).  That Trotter has
actually filed a claim in the District of South Carolina makes
this concern more salient than in a situation where additional
related claims in other courts are no more than hypothetical.
Transferring the case should reduce the costs the Fund may
otherwise incur if the litigation were split between the venues,
and should promote the special ERISA venue provision's goal of
making "collection efforts efficient, economical, and inexpensive
for ERISA funds[.]"  Flynn, 310 F. Supp. 2d at 193 (noting
"Congress's intent to protect the financial integrity of such
funds").

Regarding the other private factors, although the fund is
administered in the District of Columbia, the claim arose out of
a dispute about the interpretation of a South Carolina collective
bargaining agreement.  (See Compl. ¶¶ 8-10; Def.'s Mem., Ex. A at
1.)  Agreement terms reached in South Carolina, as well as the
adequacy of Trotter's payments regarding its key employees in
South Carolina, will be focal points of the ongoing litigation.
(Def.'s Reply at 2-3.)  All seventeen witnesses the defendant has

identified reside in South Carolina (Def.'s Reply at 6), while
only three witnesses the plaintiff has identified reside in
Washington, D.C. (Pl.'s Opp. at 6.) While merely showing that a
transfer would "shift the balance of inconvenience from Defendant
to Plaintiff" is not sufficient to warrant a transfer, <u>Int'l
Painters and Allied Trades Indus. Pension Fund v. Tri-State
Interiors, Inc.</u>, 357 F. Supp. 2d 54, 58 (D.D.C. 2004), selecting
a forum where both the plaintiff can call its witnesses and the
defendant can bring claims against parties from whom it seeks
relief is no mere shift of inconvenience. It is true that there
are relevant documents, such as Trotter's monthly contribution
reports and the audit findings, in Washington, D.C. (<u>id.</u> at 5;
Pl.'s Supp'l Opp. at 1), but there are also relevant documents,
such as the key employees' payroll records, located in South
Carolina. (Def.'s Mem. at 12.) The location of documents favors
neither party, but the balance of the other private factors
weighs in favor of transfer.

II. PUBLIC INTERESTS

    South Carolina has a strong interest in making decisions
about what is, at bottom, a South Carolina dispute over the
interpretation of a South Carolina contract involving the payment
of South Carolina employees. The plaintiff claims, though, that
transferring the case would frustrate its interest in the uniform
interpretation of the Fund's Trust Agreement. (<u>See</u> Pl.'s Opp. at

11-12.)  Because Trotter agrees that it would owe contributions
to the pension fund for its key employees but for their status
under the collective bargaining agreement (Def.'s Mem. at 4), the
dispute does not turn on an interpretation of the trust
agreement.  Transferring the case to South Carolina, therefore,
would have no detrimental effect on the uniform interpretation of
the plan's terms because the inquiry under § 515 will focus on
the meaning of the collective bargaining agreement to determine
if Trotter made contributions "in accordance with the terms and
conditions of . . . such [an] agreement."  29 U.S.C. § 1145.
Indeed, South Carolina law likely will govern the interpretation
of the collective bargaining agreement, and the District Court
for the District of South Carolina would likely bring to the
litigation far more familiarity with South Carolina law than
would the District Court for the District of Columbia.  Cf.
Demery, 602 F. Supp. 2d at 211 (noting that both the potential
transferee and transferor courts were "presumed to be equally
familiar" with federal law).

Finally, the District of Columbia has a slightly longer
median time from filing to disposition for civil cases than the
District of South Carolina has (Def.'s Mem. Ex. C at 2-3[1]), and
the District of South Carolina has a higher number of pending

---

[1] Defendant's exhibit is unpaginated.  Pagination,
therefore, has been supplied by the Court.

cases per judge than does the District of Columbia.  (Id.)
However, even if the District of South Carolina is relatively
more congested than the District of Columbia is, transfer will
conserve overall federal judicial resources that would otherwise
be expended if the parties litigated two simultaneous actions
instead of just one.  On balance, the public interests tilt in
favor of transfer.

<u>CONCLUSION AND ORDER</u>

Although the plaintiff's choice of forum is due particular
deference in an ERISA action, the defendant has carried its
burden of demonstrating that the private and public interests
weigh in favor of transfer.  Accordingly, it is hereby

ORDERED that the defendant's motion [7] to transfer be, and
hereby is, GRANTED.  The Clerk's Office is DIRECTED to transfer
the case to the United States District Court for the District of
South Carolina.

SIGNED this 9th day of November, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge